FILED
2014 MAY -1 PM 1:43
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>HAKOP GAMBARYAN,<br><br>    Defendant. | No. CR14-0249<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done] |

The Grand Jury charges:

COUNTS ONE THROUGH FIVE

[18 U.S.C. §§ 1347 and 2(b)]

**A. INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment:

1. Defendant HAKOP GAMBARYAN ("GAMBARYAN") was the owner and President of Colonial Medical Supply ("Colonial"), a supplier of durable medical equipment ("DME"), primarily power wheelchairs ("PWCs"), located in Van Nuys, California, within the Central District of California.

///

2. On or about January 9, 2006, defendant GAMBARYAN executed and submitted an application to Medicare to obtain a Medicare provider number for Colonial.

3. In or around January 2006, defendant GAMBARYAN opened a corporate bank account for Colonial at First Bank, account number **** 6729 (the "Colonial Bank Account"). Defendant GAMBARYAN maintained sole control of this account.

4. On or about August 11, 2006, defendant GAMBARYAN executed and submitted an electronic funds transfer agreement ("EFT") to Medicare, requesting that all future reimbursements from Medicare be directly deposited into the Colonial Bank Account.

5. Between in or around March 2006, and in or around December 2012, Colonial submitted to Medicare claims totaling approximately $3,370,200 for DME, and Medicare paid Colonial approximately $1,740,009 on those claims.

The Medicare Program

6. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

7. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health identification card number ("HICN").

8.  Medicare was subdivided into several parts, including Medicare Part B, which covered physician's services and DME.

9.  DME supply companies, physicians, and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations.  If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for processing and payment of claims.

10.  A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to beneficiaries.

11.  CMS contracted with regional contractors to process and pay Medicare claims.  Prior to approximately October 2006, the Medicare contractor responsible for the processing and payment of DME claims in Southern California was CIGNA Government Services ("CIGNA").  Since approximately October 2006, the Medicare contractor responsible for the processing and payment of such claims has been Noridian Administrative Services ("Noridian").

12.  Most providers submitted their claims electronically pursuant to an agreement they executed with Medicare in which the providers agreed that they were responsible for all claims submitted to Medicare by themselves, their employees, and their agents; that they would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization

to do so; and that they would submit claims that were accurate, complete, and truthful.

13.  Medicare generally reimbursed a provider for DME only if the DME was prescribed by the beneficiary's physician, the DME was medically necessary to the treatment of the beneficiary's illness or injury, and the DME supplier provided the DME in accordance with Medicare regulations and guidelines, which governed whether Medicare would reimburse a particular item or service.

14.  For some types of DME, depending on the year involved, Medicare required additional documentation such as a Certificate of Medical Necessity ("CMN"), signed by the referring physician, certifying that the patient had the medical conditions necessary to justify the DME.

15.  Medicare required a CMN for PWC claims submitted on or before April 1, 2006, with dates of service on or before May 1, 2005.  For PWCs supplied after that date, Medicare required the supplier to have and maintain documentation showing that the physician ordering the PWC had made a face-to-face evaluation of the patient.

16.  To bill Medicare for services rendered, a provider submitted a claim form (Form 1500) to the appropriate Medicare contractor.  When a Form 1500 was submitted, usually in electronic form, the provider certified:

    a.  the contents of the form were true, correct, and complete;

    b.  the form was prepared in compliance with the laws and regulations governing Medicare; and

          c.    the services being billed were medically necessary.

17. A Medicare claim for payment was required to set forth, among other things, the following: the beneficiary's name and unique Medicare identification number; the type of DME provided to the beneficiary; the date that the DME was provided; and the name and Unique Physician Identification number ("UPIN") or National Provider Identification number ("NPI") of the physician who prescribed or ordered the DME.

**B.  THE SCHEME TO DEFRAUD**

18. Beginning in or around January 2006 and continuing through in or around December 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant GAMBARYAN, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

**C.  MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD**

19. The fraudulent scheme operated, in substance, as follows:

          a.    Defendant GAMBARYAN and others known and unknown to the Grand Jury obtained Medicare beneficiary information

through various means for the purpose of using that information to submit, and cause the submission of, false and fraudulent claims to Medicare on behalf of Colonial, for DME that was not medically necessary.

       b. Defendant GAMBARYAN and others known and unknown to the Grand Jury obtained prescriptions for DME, primarily PWCs, purportedly ordered by doctors. These doctors were not the primary care physicians for the beneficiaries, and many of the doctors did not know that their provider numbers were being used to prescribe DME.

       c. Defendant GAMBARYAN and others known and unknown to the Grand Jury delivered, or caused to be delivered, DME to the Medicare beneficiaries, knowing that those beneficiaries did not medically need the DME.

       d. Defendant GAMBARYAN and others known and unknown to the Grand Jury photocopied beneficiaries' signatures and altered dates on false certifications stating that the beneficiaries intended to continue renting DME.

       e. Defendant GAMBARYAN and others known and unknown to the Grand Jury submitted, and caused the submission of, false and fraudulent claims to Medicare for DME, including PWCs, that Colonial purportedly provided to Medicare beneficiaries, knowing that the beneficiaries did not have a medical need for the DME.

       f. As a result of the submission of false and fraudulent claims, Medicare made payments to the Colonial Bank Account, which defendant GAMBARYAN controlled.

      g.   Defendant GAMBARYAN then transferred and disbursed monies from the Colonial Bank Account to himself and others, doing so, among other ways, by converting funds from the Colonial Bank Account into cash by issuing checks to third parties who cashed the checks and returned the money to defendant GAMBARYAN, less a fee for their services.

### D. THE EXECUTION OF THE FRAUDULENT SCHEME

20.   On or about the dates set forth below, within the Central District of California and elsewhere, defendant GAMBARYAN, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully submitted and caused to be submitted to Medicare for payment the following false and fraudulent claims purportedly for PWCs and related accessories:

| COUNT | BENEFICIARY | CLAIM NUMBER | APPROX. DATE SUBMITTED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|
| ONE | A.V. | 109286835738000 | 10/13/09 | $5,445.38 |
| TWO | G.R. | 110012840758000 | 1/12/10 | $6,156.60 |
| THREE | G.S. | 110075851693000 | 3/15/10 | $5,457.37 |
| FOUR | J.O. | 110134840720000 | 5/14/10 | $5,457.37 |

///

| COUNT | BENEFICIARY | CLAIM NUMBER | APPROX. DATE SUBMITTED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|
| FIVE | C.M. | 10354873910000 | 12/20/10 | $5,457.37 |

A TRUE BILL

/S/
--------
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*[signature]*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

BENJAMIN D. SINGER
Deputy Chief, Fraud Section
United States Department of Justice

FRED MEDICK
Trial Attorney, Fraud Section
United States Department of Justice

DAN ACKERMAN
Assistant United States Attorney

8